IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-80216-CIV-SMITH

KK-PB FINANCIAL, LLC,

                Appellant,

v.

160 ROYAL PALM, LLC,

                Appellee.

**APPELLANT KK-PB FINANCIAL, LLC'S EXPEDITED
MOTION TO STAY CONFIRMATION ORDER PENDING APPEAL**
(Expedited Relief Requested)

**\*\* Expedited Relief Is Requested As Soon As the Court Is Able to Consider the Motion\*\***

> **In accordance with Local Rule 7.1(d), Appellant KK-PB Financial, LLC respectfully requests that the Court grant an immediate stay of the Bankruptcy Court's order confirming the Debtor's third amended plan of liquidation, which was entered on February 11, 2020. Such request is on an expedited basis because the Debtor has stated publicly it intends to distribute the funds pursuant to the plan on February 14, 2020, which may cause irreparable harm.**

Appellant, KK-PB Financial, LLC ("KK-PB"), under Rule 8007(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), submits this expedited motion to stay pending appeal (the "Motion") the *Order Confirming Debtor's Third Amended Plan of Liquidation* [ECF No. 2 at Ex. 4] (the "Confirmation Order") issued by the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), which is the order on appeal (the "Appeal"), and in support thereof states as follows:

## INTRODUCTION

1. Like the motion for stay pending appeal that it filed on February 12 in the Bankruptcy Court (which denied the motion yesterday), KK-PB does not file this Motion lightly.

AMERICAS 98757854

KK-PB is mindful of this Court's order from three days ago denying KK-PB's renewed motion to stay the Bankruptcy Court's *Order Estimating the Claim of KK-PB Financial, LLC and Denying Ability to Credit Bid* [ECF No. 2 at Ex. 1] (the "Estimation Order") pending appeal, in which the Court noted other appeals filed, and motions for stay made, by KK-PB in this bankruptcy case on which KK-PB has not prevailed. However, just three days ago, the Bankruptcy Court confirmed the Debtor's *Third Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Third Amended Plan," which is attached hereto as Exhibit A), and waived the automatic 14-day stay of such order provided by Bankruptcy Rule 3020(e) over KK-PB's objection. Both the Debtor and the Bankruptcy Court have expressly stated, on the record, that they believe KK-PB's rights on appeal will be extinguished as moot if KK-PB does not obtain a stay pending appeal of the Confirmation Order. Yesterday, the Debtor's manager (also the Liquidation Trustee under the Third Amended Plan) filed an affidavit stating that the Third Amended Plan has gone effective and that approximately $31 million (of approximately $40 million) of estate assets for distribution will be mailed out on February 14, 2020. In light of the foregoing, KK-PB must respectfully file this Motion and seek expedited relief from this Court.

2.  KK-PB believes a stay pending appeal of the Confirmation Order is appropriate for the following reasons. First, KK-PB is substantially likely to prevail in its appeal of the Confirmation Order. The Third Amended Plan improperly classifies Class 1-Allowed Trade Creditors Secured Claims ("Class 1") as unimpaired and not entitled to vote even though the Third Amended Plan alters the rights of holders of Class 1 claims, which constitutes impairment under section 1124(1) of title 11 of the United States Code (the "Bankruptcy Code"). Moreover, the Third Amended Plan grants the purchaser of the Hotel, LR U.S. Hotels Holdings, LLC ("LR"), a

2

springing postpetition priming secured lien that has no statutory basis. Also, the Third Amended Plan does not provide any mechanism to allow KK-PB to recover on its secured mortgage claim even if KK-PB is successful in its appeal of the Estimation Order (the "Estimation Appeal")[1] and the claim becomes allowed. Finally, the Bankruptcy Court waived the 14-day stay without adequate cause. Second, the threat of irreparable harm is actual and imminent because the Estimation Appeal may become moot when the Third Amended Plan is substantially consummated, which could leave KK-PB without any remedy to recover on its secured mortgage claim in the event of a successful appeal and allowance of the claim. Third, a stay of the Confirmation Order will cause little or no harm to other parties. Fourth, granting the stay is in the public interest.

## BACKGROUND

### I. The Estimation of KK-PB's Mortgage Claim

3.  In August 2013, in connection with the sale of its equity interest in the Debtor to Palm House LLC for $36 million, KK-PB extended seller financing, with the Debtor (a party to the transaction) granting a note (the "Note") and mortgage (the "Mortgage") secured by the Palm House Hotel (the "Hotel") to KK-PB. The Note and Mortgage are the basis of KK-PB's $39,684,844.73 secured claim (Claim No. 70-3) (the "Mortgage Claim").

4.  Appellee 160 Royal Palm, LLC (the "Debtor") filed its chapter 11 bankruptcy case on August 2, 2018, with the primary purpose to sell its only significant asset, the partially constructed Hotel. At that time, KK-PB was the Debtor's largest secured creditor as a result of the Mortgage Claim. If the Mortgage Claim is allowed, KK-PB would receive substantially all of the proceeds from the approximately $40 million sale of the Hotel (the "Sale Proceeds").

---

[1] The Estimation Appeal is pending before this Court at Case No. 19-cv-80342, subject to the Court reopening the case in light of the Eleventh Circuit's decision declining to take direct appeal of the Estimation Order.

3

However, after a hearing to determine KK-PB's right to credit bid at the Debtor's proposed (later abandoned) auction of the Hotel and KK-PB's request to estimate its Mortgage Claim for the limited purpose of credit bidding, the Bankruptcy Court issued the Estimation Order that estimated KK-PB's Mortgage Claim at $0 for all purposes, effectively disallowing the Mortgage Claim, and effectively stripping it of its security interest and constitutionally protected property rights.

5. KK-PB appealed the Estimation Order to this Court in March 2019.[2] On August 29, 2019, KK-PB also filed a motion for stay pending appeal of the Estimation Order with this Court. See Case No. 19-80342 [ECF No. 36]. In November 2019, this Court *sua sponte* certified the Estimation Appeal to the Eleventh Circuit. See Case No. 19-80342 [ECF No. 42]. On January 17, 2020, KK-PB sought a motion to stay the Estimation Order pending appeal from the Eleventh Circuit. On February 6, 2020, the Eleventh Circuit denied the petition for direct certification and KK-PB's motion for stay pending appeal. On February 7, 2020, KK-PB moved to reopen the Estimation Appeal before this Court. See Case No. 19-80342 [ECF No. 51]. KK-PB also renewed its previous request for a stay pending appeal with this Court, which was denied on February 11, 2020. See Case No. 19-80342 [ECF No. 56].

**II.    The Sale of the Hotel**

6. In March 2019, the Debtor sought—and the Bankruptcy Court approved—a private sale of the Hotel to LR. [Bankr. ECF Nos. 604, 605, 619, 627, 651]. KK-PB objected both to the expedited private sale procedures and to the sale to LR. E.g., [Bankr. ECF No. 675,

---

[2] The Bankruptcy Court suggests that KK-PB did not actively pursue the Estimation Appeal, noting that KK-PB "did not seek to expedite that appeal (as it did with other appeals)". Order Denying Stay 2. However, at oral argument before this Court in the Sale Appeal (defined below), KK-PB reserved the right to expedite the Estimation Appeal if the Debtor filed a plan, which had not yet occurred, and this Court indicated that it could do so. Case No. 9:19-cv-80342 [ECF No. 22]. When the Debtor proposed its First Amended Plan (defined below), KK-PB requested this Court to expedite the Estimation Appeal in its Reply Brief. Case No. 19-80342 [ECF No. 31].

at 20:9-21:13, 22:4-19]; [Bankr. ECF No. 629]. At the March 8, 2019 final sale hearing, KK-PB provided its own cash offer to purchase the Hotel, [Bankr. ECF No. 651 Ex. A, at 5], which the Debtor declined, and the Bankruptcy Court approved the sale to LR (the "Sale Order"). The Sale Order required LR to pay the purchase price to the Debtor. Sale Order ¶¶ E, 5.

7. KK-PB appealed (the "Sale Appeal") the orders approving the sale procedures and the Sale Order first to this Court, which affirmed, In re 160 Royal Palm, LLC, 600 B.R. 119 (S.D. Fla. 2019), then to the Eleventh Circuit, which affirmed on November 25, 2019, and later denied KK-PB's petition for panel rehearing on January 29, 2020. The Eleventh Circuit issued its mandate in the Sale Appeal on February 6, 2020.

### III. The Plan Confirmation Process

8. In addition to its Mortgage Claim, KK-PB holds Claim No. 72-1 (the "New Haven Claim"), which is a disputed secured claim in the amount of $3,387,855.55. The New Haven Claim remains disputed as the Debtor's challenge to such claim is ongoing. Additionally, KK-PB holds an allowed unsecured claim in the amount of $10,940.85 (the "All-Star Claim"). See [Bankr. ECF No. 974].

9. The Debtor filed its first amended liquidating plan (the "First Amended Plan") [Bankr. ECF No. 1297] and accompanying disclosure statement [Bankr. ECF No. 819] (as amended, the "Disclosure Statement") in June 2019. At a hearing on September 24, 2019 on confirmation of the First Amended Plan, the Bankruptcy Court declined to confirm such plan. [Bankr. ECF No. 1404].

10. On December 16, 2020, the Debtor filed its second amended liquidation plan (the "Second Amended Plan") [Bankr. ECF No. 1445], which sought, among other things, to provide LR an enhanced debtor-in-possession financing priming lien on all of the Debtor's assets in the amount of $45 million upon confirmation, and explicitly to prohibit KK-PB from recovering on

the Mortgage Claim, even if KK-PB prevailed on the Estimation Appeal and the Mortgage Claim became an allowed claim. See Second Amended Plan at §§ 3.5-3.6. Although the Second Amended Plan sought to release the Sale Proceeds to the Debtor on the date of confirmation, the Bankruptcy Court noted several concerns and defects in the Second Amended Plan at a December 20, 2019 hearing and the Debtor withdrew the Second Amended Plan.

11. The Debtor filed its current Third Amended Plan on December 26, 2019, and moved to reset the plan confirmation hearing without amending its original Disclosure Statement or re-soliciting votes from the First Amended Plan. See [Bankr. ECF No. 1472] (the "Reset Motion").

12. The Third Amended Plan provides LR a new springing postpetition senior lien on the Hotel (the "Sale Assets Lien") securing a claim of approximately $41 million (the "Sale Assets Claim") in the event that the Eleventh Circuit or the Supreme Court orders the Hotel re-conveyed back to the Debtor. See Third Amended Plan § 3.6. Such a lien, which has no statutory basis, would prime the claim and lien of all existing secured creditors of the Debtor, including all claims asserted by creditors in Class 1, who are classified as unimpaired. Id. Like the First Amended Plan and the Second Amended Plan, the Third Amended Plan does not provide any mechanism through which KK-PB could recover on its secured Mortgage Claim in the event the Estimation Order is reversed and the Mortgage Claim eventually becomes an allowed claim. See Third Amended Plan §§ 1.22; 5.3.

13. Because the Third Amended Plan sought to add the additional Sale Assets Lien and Sale Assets Claim, which threatened to prime the interests of its New Haven Claim in Class 1, KK-PB objected to the Reset Motion, arguing among other things, that the Sale Assets Lien and Sale Assets Claim impaired Class 1, but did not re-classify them as impaired. [Bankr. ECF

No. 1482]. The Bankruptcy Court overruled KK-PB's objection and granted the Reset Motion, setting the confirmation hearing for February 10, 2020. [Bankr. ECF No. 1495] (the "Reset Order"). The findings and holdings of the Bankruptcy Court in the Reset Order are incorporated into the Confirmation Order. Confirmation Order ¶ S.

14. The Third Amended Plan is a liquidating plan with four classes of creditors. Class 1-Allowed Trade Creditor Secured Claims, consists of certain secured claims, including KK-PB's New Haven Claim. Class 1 is entitled to payment in full and is classified as unimpaired. Third Amended Plan § 4.1.[3] Class 2 includes only one secured claim, by the Town of Palm Beach, in the amount of $4,141,000, and the Town has accepted payment of $350,000 under a settlement with the Debtor. Third Amended Plan § 4.2. Class 2 is classified as an impaired class. Class 3 consists of all allowed unsecured claims, including KK-PB's All-Star Claim. All claims in Class 3 are entitled to a "pro rata" distribution from all remaining Sale Proceeds available after distribution to Classes 1 and 2. Third Amended Plan § 4.3. Class 3 is classified as an impaired class and each claimant in this class is expected by the Debtor to receive approximately a 15-30% recovery on its claims. [ECF No. 969 at Ex. A]. Class 4 consists of all equity interests, which will not be receiving any distribution under the Third Amended Plan. Class 1 was not entitled to vote, but Classes 2 and 3 accepted the Third Amended Plan. Confirmation Order ¶ L.

15. The Third Amended Plan provides for a Disputed Claims Fund (§ 5.3) to maintain "sufficient funds to pay and reserve for all Post-Confirmation Administrative Claims" and "Disputed Claims," meaning that the Disputed Claims Fund will hold enough cash to make distributions to all Disputed Claims in the amounts to which such Disputed Claims are entitled under the plan. Thus, because the New Haven Claim is disputed, the Debtor or Liquidating

---

[3] The First Amended Plan and Third Amended Plan contain the same classes and the same proposed treatment for each Class. All citations in this paragraph are to the Third Amended Plan.

Trustee must hold enough cash in the Disputed Claims Fund to pay the New Haven claim in full if it becomes an allowed claim.

### IV. Confirmation of the Third Amended Plan and KK-PB's Attempts to Stay

16. On February 11, 2020, the Bankruptcy Court entered the Confirmation Order over KK-PB's objections and waived the 14-day stay of such order imposed by Bankruptcy Rule 3020(e). On February 12, 2020, KK-PB filed an emergency motion to stay the Confirmation Order pending Appeal, which the Bankruptcy Court denied the next day (its "Order Denying Stay"). [ECF No. 2].

17. The Debtor announced yesterday that, pursuant to the Third Amended Plan, LR released the Sale Proceeds to the Debtor and the Plan became effective on February 13, 2020. [Bankr. ECF No. 1539]  The Debtor intends to make $31 million of its approximately $40 million in distributions to creditors on February 14, 2020. See [Bankr. ECF No. 1594] (attached hereto as Exhibit B).

18. Now, because the Bankruptcy Court has confirmed the Third Amended Plan and the threat of irreparable harm is actual and imminent, KK-PB moves to stay the Confirmation Order pending this Court's resolution of the appeal on an expedited basis. See Fed. R. Bankr. P. 8007(b).

### ARGUMENT

19. As stated, the Bankruptcy Court has already considered KK-PB's request for a stay pending appeal of the Confirmation Order and denied it yesterday pursuant to its Order Denying Stay. While the Bankruptcy Court obviously believes KK-PB's arguments and grounds for a stay pending appeal are without merit, KK-PB respectfully disagrees with the Bankruptcy Court. Because of (i) the Bankruptcy Court's recent entry of the Confirmation Order, waiver of the 14-day stay under Bankruptcy Rule 3020(e), and denial yesterday of KK-PB's motion for stay

8

pending appeal, and (ii) the Debtor's stated goal to seek to moot KK-PB's appeals and its announcement yesterday it will make $31 million of plan distributions to creditors as soon as today, by filing this Motion with this Court, KK-PB is simply trying to preserve its legal right to be heard on its issues on appeal. For the reasons set forth below, KK-PB respectfully submits the Motion should be granted.

20. Parties seeking to stay an order on appeal "must show: '(1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the[m] unless the [stay] is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest.'" Woide v. Fannie Mae (In re Woide), 730 F. App'x 731, 737 (11th Cir. 2018) (citations and internal quotation marks omitted). KK-PB satisfies those requirements.

**I.     KK-PB Has a Substantial Likelihood of Success on the Merits**

21. KK-PB believes it has a substantial likelihood of success in its appeal of the Confirmation Order because the Third Amended Plan violates sections 1123, 1124, 1126, and 1129 of the Bankruptcy Code, making it unconfirmable. See 11 U.S.C. § 1129(a)(1). "[A] sufficient degree of success for [granting of a stay] exists if there is a reasonable chance, or probability, of winning . . . while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." Revel AC, Inc. v. IDEA Boardwalk LLC, 802 F.3d 558, 568-69 (3d Cir. 2015) (internal citations and quotations omitted) (cited by In re Woide, 730 F.App'x at 737). Legal conclusions by the bankruptcy court are reviewed *de novo*. In re Woide, 730 F. App'x at 734.

> **A.  The Third Amended Plan Violates Sections 1124 and 1126 Because Class 1 Secured Creditors Were Wrongly Classified as Unimpaired and Not Allowed to Vote**

22. The Third Amended Plan wrongly classifies Class 1 as an "unimpaired" class even though the contingent Sale Assets Lien in favor of LR under the Plan (§ 3.6) impairs their rights.

9

Section 1124 of the Bankruptcy Code determines whether a class of claims is impaired, and impaired classes receiving a distribution under the plan are entitled to vote under section 1126. Section 1124(1) of the Bankruptcy Code provides that "a class of claims . . . is impaired under a plan unless, with respect to each claim . . . of such class, the plan— . . . leaves *unaltered the legal, equitable, and contractual rights* to which such claim . . . entitles the holder of such claim . . . .") (emphasis added). 11 U.S.C. § 1124(1). The Third Amended Plan grants LR the Sale Assets Claim and Sale Assets Lien that primes the security interests of all Class 1 secured claims. See Third Amended Plan § 3.6. This contingent lien and claim "alters" such creditors' legal, equitable, and/or contractual rights (including KK-PB's rights), and therefore impairs Class 1. Contrary to the Bankruptcy Court's findings, (Order Denying Stay 6), this legal conclusion is based on the plain meaning of the Bankruptcy Code.

23.   Impairment is interpreted in the "broadest possible terms" to encompass any type of change in a creditor's rights – *even if the creditors are entitled to payment in full*. See In re L&J Anaheim Assocs., 995 F.2d 940, 942-43 (9th Cir. 1993). For example, in L&J Anaheim Assocs., the plan proposed to auction the debtor's assets and "use the proceeds to pay off all outstanding liens in order of their priority." Id. at 941. The plan also set aside the class 1 secured creditor's remedy rights under a loan agreement and instead provided that its collateral would be auctioned pursuant to the Bankruptcy Code. The Ninth Circuit held that the plan "altered [the creditor's] prepetition contract rights, leaving it impaired within the meaning of the Code," even though it was entitled to payment in full and its rights may have been "enhanced." Id.

24.   The Third Amended Plan provides that creditors in Class 1 are entitled to payment in the full amount of their claims. Thus, the Bankruptcy Court stated that, "as [KK-PB's] counsel well knows, payment in full is not impairment[.]" See Order Denying Stay 6. But Congress and

case law have made it clear that paying a class in full does *not* leave a class of claims unimpaired if their rights are otherwise altered by the plan's provisions, which is the case here. Significantly, prior to its deletion by Congress in 1994, subsection (3) of section 1124 of the Bankruptcy Code contained a "third means of leaving a class unimpaired," which was if each claim received cash in the allowed amount of such claim. See 7 Collier on Bankruptcy P 1124.LH (16th 2019). But the "Bankruptcy Reform Act of 1994 deleted paragraph (3) in its entirety from section 1124." Id. The House Committee explained that, as a result of deleting paragraph (3), even "if a plan proposed to pay a class of claims in cash in the full allowed amount of the claims, the class would be impaired entitling creditors to vote for or against the plan of reorganization." H.R. Rep. No. 103-835, at § 214 (1994). Thus, providing for payment in full under a plan does *not* mean unimpairment. Under the plain meaning of current section 1124 (1) of the Bankruptcy Code, the Class 1 secured creditors are "impaired" by the imposition of the priming, senior secured Sale Assets Lien in favor of LR (§ 3.6). See United States v. Ron Pair Enters., 489 U.S. 235, 241 (1989) ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute.").

25.     Respectfully, KK-PB submits the cases cited by the Bankruptcy Court in the Reset Order, which are incorporated into the Confirmation Order, do not support a finding that Class 1 is not impaired. See Reset Order at 11. In In re Introgen Therapeutics, 429 B.R. 570, 581 (Bankr. W.D. Tex. 2010),[4] the court held that a plan that altered the contractual rights of a class of secured creditors impaired such class. In Solow v. PPI Enters.(U.S.) (In re PPI Enters.(U.S.)), 324 F.3d 197, 205 (3d Cir. 2003), the Third Circuit held that impairment by application of the Bankruptcy

---

[4] The Introgen Therapeutics court did not discuss whether it would have reached the same result if the plan had provided for payment of postpetition interest but still altered the creditors' contractual rights—as it had no need to reach that question.

11

Code—rather than by application of the plan—does not constitute impairment. Id. at 205 (holding that reduction of unsecured creditor's claim by application of section 502(b)(6) of the Bankruptcy Code was not impairment because it is the "Code, not the Plan" that alters his rights). Here, it is the Third Amended Plan itself (§ 3.6) that is causing impairment. Though PPI also suggests that Congress's repeal of section 1124(3) had the effect of only "eliminat[ing] the anomalous result created by the *New Valley* decision" (i.e., that nonimpairment due to receiving "cash equal to . . . the allowed amount of [a] claim" requires the payment of postpetition interest), that statement was dicta and PPI did not involve a situation where the plan altered the creditor's rights within the meaning of section 1124(1).

26.     The Third Amended Plan provides for the Sale Assets Claim and the Sale Assets Lien in favor of LR (§ 3.6), and the Reset Order notes that such lien attaches to the Hotel if they are returned to the Debtor upon reversal of the Sale Order by the Eleventh Circuit or the Supreme Court. Reset Order at 7, 11. The Bankruptcy Court rejected KK-PB's argument that Class 1 claims (including KK-PB's approximately $3.5 million New Haven claim) are impaired if LR is granted a priming lien on the Hotel. See Order Denying Stay 6.

27.     The Bankruptcy Court references paragraph 11 of the Sale Order when it states that the lien securing the New Haven Claim "attaches to the cash proceeds from the sale and the claim, if allowed, will be paid in full." Order Denying Stay 6; Sale Order ¶ 11 ("Any liens, interests, or encumbrances which may exist . . . shall attach to the net proceeds of the sale of the Assets in the order of their priority, with the validity, force and effect that they now have, if any, against the Assets[.]") The Bankruptcy Court reasoned, that in the event the Hotel is returned to the Debtor, "LR would be the only party with a lien on the [Hotel]." Reset Order at 7, 11. And, because the Third Amended Plan provides that all Class 1 Creditors will be paid in full from the

Sale Proceeds, the Bankruptcy Court found that Class 1 is unimpaired. Order Denying Stay 6. The Bankruptcy Court's reasoning, however, is incorrect because the Sale Assets Lien only comes into effect if the Sale Order is vacated. And if the Sale Order is vacated, paragraph 11 of the Sale Order would automatically be vacated, meaning that all legal, equitable and contractual rights of Class 1 secured creditors would be reinstated as required by section 1124(a) of the Bankruptcy Code, and the liens of such creditors would reattach to the Hotel. If any Class 1 claims have not yet been paid in full, such as KK-PB's New Haven Claim (which is being disputed by the Debtor and not yet entitled to distribution), its security interest in the Hotel will be primed by the Sale Assets Claim and Sale Assets Lien under Section 3.6 of the Plan.

28.     Because Class 1 is impaired, the Third Amended Plan should have classified Class 1 as an impaired class, see 11 U.S.C. § 1123(a), and Class 1 creditors should have been allowed to vote under section 1126(a). Such a defect in the Plan violates sections 1124(1) and 1126 and renders the Third Amended Plan non-confirmable under section 1129(a)(1) of the Bankruptcy Code. See 11 U.S.C. § 1129(a)(1) ("The court shall confirm a plan only if. . . .the plan complies with the applicable provisions of this title.") The Bankruptcy Court noted its view that impairing Class 1 and allowing a vote by such Class would not prevent confirmation. Order Denying Stay 7. But the Third Amended Plan did not provide for such impairment and vote of Class 1, and accordingly, KK-PB only objected based on the Third Amended Plan's current treatment of its New Haven Claim as opposed to a hypothetical cram down of Class 1 under section 1129(b) of the Bankruptcy Code. Because the Third Amended Plan violated sections 1124(1) and 1126 of the Bankruptcy Code, the Third Amended Plan was not confirmable pursuant to the express terms of section 1129(a)(1) of the Bankruptcy Code.

### B. There Is No Statutory Basis for LR's Priming Sale Assets Claim and Sale Assets Lien

29. The priming contingent Sale Assets Lien and Sale Assets Claim for LR under the Third Amended Plan (§ 3.6) is senior to all other liens and claims. This additional consideration for LR was not included in the asset purchase agreement ("APA") approved by the Bankruptcy Court in the Sale Approval Order, which provided for an unconditional release of the Sale Proceeds to the Debtor at closing. The Bankruptcy Court does not cite any statutory basis for granting LR a brand new, postpetition priming lien and claim, simply stating that a "lien to protect the purchaser in this unbelievably remote circumstance is eminently reasonable." Order Denying Stay 7. Although KK-PB agrees that LR should be left with a "remedy" if the Sale Order was vacated, KK-PB does not find any basis for LR to receive a pre-approved senior lien on the Hotel that primes the liens of creditors in Class 1, and LR did not expressly bargain for such a right in the APA.

### C. The Third Amended Plan Violates Section 1123(a) of the Bankruptcy Code Because It Does Not Provide Treatment of KK-PB's Secured Mortgage Claim in the Event Such Claim Is Allowed After Appeal

30. KK-PB's secured Mortgage Claim was estimated by the Bankruptcy Court at $0 for all purposes and the Bankruptcy Court has found that the claim is disallowed. See Estimation Order. The Estimation Order is currently on appeal before this Court, and the Third Amended Plan does not provide any class where the secured Mortgage Claim is classified and treated if the Estimation Order is reversed, which violates section 1123(a) of the Bankruptcy Code. See 11 U.S.C. § 1123(a) ("a plan shall—designate[]classes of claims.")

31. Additionally, the Third Amended Plan by its terms risks depriving the appellate court of the ability to render effective relief in the event of a successful appeal. In In re Demarco, 258 B.R. 30, 36 (Bankr. M.D. Fla. 2000), the bankruptcy court was faced with a similar issue of

whether to confirm a chapter 13 plan with "the appeal of the Order disallowing the IRS's secured claim that is currently pending in the United States District Court." Id.  The plan had "expressly provide[d] that the IRS will not receive any distribution on its tax lien, and that the lien will be released upon confirmation." Id.  The court ultimately decided that it would defer consideration of the plan pending resolution of the appeal because confirmation of the Debtor's plan might "have the effect of depriving the IRS of 'effective judicial relief' in the event that the IRS prevail[ed] on appeal." Id.

32. Similarly, KK-PB's Estimation Appeal is pending in this Court, and if KK-PB prevails in the Estimation Appeal and the Estimation Order is reversed, the Mortgage Claim would become a Disputed Claim and potentially an Allowed Claim.  The Debtor stated in its Disclosure Statement (approved by the Bankruptcy Court) that if KK-PB is successful in the Estimation Appeal, the Mortgage Claim would "be treated as a Disputed Claim." [Bankr. ECF No. 969 at 29].  The Bankruptcy Court found that this statement was only applicable to the Debtor's "superseded first amended plan, which did not provide for immediate distribution of sale proceeds," and, because the Third Amended Plan can be consummated quickly, any possibility of the Mortgage Claim being reinstated is "moot." Confirmation Order Ex. A at 5.  The Bankruptcy Court also noted that, once the Third Amended Plan is substantially consummated, "the claim objection procedures would also be moot." Id.  But mootness will be litigated and decided by an appellate court, not the Bankruptcy Court.  And if the Estimation Appeal is not found to be moot, the Mortgage Claim may be reinstated as a Disputed Claim as acknowledged by the Debtor in the Disclosure Statement (p. 29).

33. The Third Amended Plan's attempt to forever eliminate KK-PB's secured Mortgage Claim by providing no treatment for such treatment in the event of a successful appeal

constitutes a *de facto* discharge of KK-PB's Mortgage Claim in violation of section 1141(d)(3)(A) of the Bankruptcy Code, which expressly prohibits a discharge for the debtor under any liquidating plan.  See Third Amended Plan, §10.3 ("No Discharge of Debtor").

### D. No Cause Exists to Waive the 14-day Stay

34.     The Bankruptcy Court found that "[c]ause exists to waive the fourteen-day stay [imposed by Bankruptcy Rule 3020(e)] of the Confirmation Order," but there is no basis for that ruling.  See Confirmation Order ¶ R.  There is no evidence that KK-PB intends to interfere with consummation of the Third Amended Plan through an unrelated state-court case, and KK-PB respectfully disagrees with the Bankruptcy Court's suggestion that it has taken any inequitable actions.  KK-PB appealed the Sale Order because it believes it provided the highest and best bid which topped LR's bid to purchase the Hotel, and LR could have closed the sale at any time, but chose not to, during KK-PB's appeal.  The Debtor's only reason to seek a waiver of the stay is to attempt to equitably moot KK-PB's Estimation Appeal as quickly as possible, but that is not proper "cause".  See In re Chemtura Corp., 2010 Bankr. LEXIS 4342, at *5 (Bankr. S.D.N.Y. Nov. 3, 2010) (deciding to shorten but not entirely eliminate the stay period because "I believe that I should be wary of wholly denying any party at least an opportunity to seek a stay to avoid the mooting of its appeal.").

### II.     KK-PB Is in Danger of Irreparable Harm if the Confirmation Order Is Not Stayed

35.     A substantial risk of irreparable harm exists if the risk is "neither remote nor speculative, but actual and imminent."  Henkel v. Lickman (In re Lickman), 301 B.R. 739, 748 (Bankr. M.D. Fla. 2003).  This standard does not require the irreparable harm to be certain; the movant must only "demonstrate that irreparable injury is likely [not merely possible] in the absence of [a] [stay]."  Revel, 802 F.3d at 569 (citation omitted).  One factor in deciding the

16

likelihood of irreparable harm is "the risk that an appeal would be mooted in the absence of a stay." ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 361 B.R. 337, 348 (S.D.N.Y. 2007). "[T]he fact is that loss of appellate rights is a 'quintessential form of prejudice.' Thus, where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied." Id. at 347-48 (emphasis in original).

36. Here, KK-PB faces the prospect of imminent irreparable harm. The Bankruptcy Court has entered the Confirmation Order and has waived the statutory stay imposed by Bankruptcy Rule 3020(e). The Debtor intends to distribute the Sale Proceeds to creditors under the Third Amended Plan as early as today. "In the bankruptcy context, courts have held that distributions to creditors, while a claim allowance dispute is on appeal, may cause irreparable harm because it will dissipate the only assets available to satisfy the claim." In re Wolf, 558 B.R. 140, 144 n.5 (Bankr. E.D. Pa. 2016) (holding that if the funds of the debtor are depleted, the appellant "faces a danger of irreparable harm") (internal citations omitted). Being potentially deprived of any adequate remedy constitutes a substantial risk of irreparable harm to KK-PB. See, e.g., Transcon. Gas Pipe Line Co. v. 6.04 Acres, 910 F.3d 1130, 1165-66 (11th Cir. 2018) (holding that where "there is no adequate remedy at law to recover damages," an economic harm can be irreparable) (citation omitted).

### III. Staying the Confirmation Order Will Not Harm Other Parties

37. A stay of the Confirmation Order will not harm other parties. A stay's only effect would be a delay in distributions under the Third Amended Plan to creditors. Because LR—not the Debtor—is purportedly occupying and maintaining the Hotel, there will be minimal additional costs to the estate. Although general unsecured creditors likely desire to receive distributions as

early as possible, staying the Confirmation Order will ensure that the Sale Proceeds are distributed in compliance with the priority scheme of the Bankruptcy Code and with minimal delay.

### IV. Staying the Confirmation Order Will Not Harm the Public Interest

38. Staying the Confirmation Order would favor the public interest. See In re Woide, 730 F. App'x at 737 ("no harm to the public interest"). Security interests are constitutionally protected property interests with special protections under the Bankruptcy Code. Bank of N.Y. Tr. Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.), 584 F.3d 229, 243 & n.18 (5th Cir. 2009) ("Secured credit represents property rights that ultimately find a minimum level of protection in the takings and due process clauses of the Constitution."). Accordingly, the public interest *requires* that the secured creditor has the opportunity to obtain a substantive appellate ruling. The Debtor's stated goal to equitably moot the Estimation Appeal and seek to eliminate KK-PB's right to a determination of its Mortgage Claim is the antithesis of promoting the public interest.

**WHEREFORE**, KK-PB requests that the Court enter an order staying the Confirmation Order pending appeal.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), I HEREBY CERTIFY that we conferred with counsel for the Debtor on February 13, 2020, and they are opposed to the relief sought herein.

Dated: February 14, 2020  
Miami, Florida

WHITE & CASE LLP

By: */s/ John K. Cunningham*  
John K. Cunningham  
Florida Bar No. 542490  
James N. Robinson  
Florida Bar No. 608858  
Fan B. He  
Florida Bar No. 0095597  
Southeast Financial Center, Suite 4900  
200 South Biscayne Boulevard  
Miami, Florida  33131-2352  
Telephone: (305) 371-2700  
Facsimile:  (305) 358-5744

*Counsel for KK-PB Financial, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 14th day of February, 2020 I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ <i>John K. Cunningham</i><br>
John K. Cunningham